SECTIONIN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| KATHLEEN OLIVASTRO,  ) | |
| ) | |
| Plaintiff,  ) | |
| ) | |
| vs.  ) | Case No.:  4:18-cv-01646 |
| ) | |
| LUXOTTICA RETAIL NORTH  ) | |
| AMERICA INC.,  ) | |
| ) | |
| Defendant.  ) | |

**DEFENDANT'S MEMORANDUM OF LAW IN SUPPORT OF ITS
MOTION TO DISMISS OR, IN THE ALTERNATIVE, TO
STAY ACTION AND COMPEL ARBITRATION**

**I.   INTRODUCTION**

In the instant lawsuit, Plaintiff Kathleen Olivastro ("Olivastro" or "Plaintiff") alleges her former employer, Defendant Luxottica Retail North America Inc. ("Luxottica" or "Defendant"), terminated her employment on the basis of her age and sex in violation of the Missouri Human Rights Act ("MHRA"), the Age Discrimination in Employment Act ("ADEA"), and Title VII of the Civil Rights Act of 1964 ("Title VII").

During the course of Plaintiff's employment, the Parties unequivocally agreed to submit "virtually all legal claims arising out of or related to [Plaintiff's] employment" to arbitration, which specifically includes claims under the ADEA, Title VII and analogous state statutes.  The subject arbitration agreement is enforceable under the Federal Arbitration Act and Missouri state law, and it explicitly covers the claims asserted in Plaintiff's Petition.  Accordingly, this action should be dismissed (or, alternatively, stayed) and the matter compelled to arbitration.

II.     STATEMENT OF FACTS

    A.     Plaintiff Entered Into An Arbitration Agreement With Luxottica

Plaintiff began working for Luxottica in 2012.  *See* Declaration of Kristin Abbinante ("Abbinante Decl."), ¶ 4, attached hereto as Exhibit 1.  In 2015, Luxottica issued a revised Associate Guide, consisting of various employment policies and agreements.  *Id.*; Exhibit A thereto (Associate Guide).  The Associate Guide includes a standalone Dispute Resolution Agreement ("DRA"), which provides that the Parties mutually agree to submit employment-related disputes to arbitration, unless the employee chooses to opt-out.  Abbinante Decl., ¶ 9; Exhibit A thereto, at pp. 41-45.  Existing employees, including Plaintiff, were instructed to review and acknowledge the revised Associate Guide using the company's online personnel platform, Eye Grow (now known as Talent Luxottica).  Abbinante Decl., ¶ 4.

The Eye Grow platform is accessed using a single sign-on process, which consists of the employee's unique LuxID (a six-digit number) and password chosen by the employee. Abbinante Decl., ¶ 5.  Employees' login information is confidential to them.  *Id.*  Once an employee signs in, the Eye Grow landing page opens.  Abbinante Decl., ¶ 6.  The employee would proceed to the performance module, which includes an inbox with tasks to complete.  *Id.* Reviewing the Associate Guide was marked as a required task when it was revised in 2015.  *Id.* Once that task was selected, the Associate Guide opened up and the employee was guided through the text of that document in its entirety.  *Id.*  The employee could print or download a PDF copy of the Associate Guide, and could obtain a paper copy by contacting Luxottica's Human Resources Department.  *Id.*

After reviewing each section of the Associate Guide on Eye Grow, employees were required to electronically check a box acknowledging they had reviewed the specific section. Abbinante Decl., ¶ 7.  Company records, maintained in the usual course of business show

2

Plaintiff logged into Eye Grow, reviewed the revised Associate Guide, and completed all associated acknowledgements, on December 4, 2015. Abbinante Decl., ¶ 8.

As part of this process, Plaintiff separately reviewed and acknowledged the DRA, a separate Associate Agreement within the Associate Guide. Abbinante Decl., ¶ 9; Exhibit B thereto (DRA acknowledgement form). Plaintiff also executed, via electronic signature, a Luxottica Associate Guide Acknowledgment and Agreement ("Acknowledgment"), which indicates that she has received the Associate Guide and agrees to abide by all of its terms. Abbinante Decl., ¶ 10; Exhibit B thereto (Associate Guide Acknowledgment and Agreement). The Acknowledgment also includes a statement that the signer "understand[s] and agree[s] to the terms of" the DRA specifically (along with other agreements), unless she exercises the right to opt-out of the DRA within 30 days. *Id.* It continues: "Absent the exercising of my right to opt-out of that Dispute Resolution Agreement (by signing and returning the Opt-Out of Dispute Resolution Agreement form within 30 days of receipt, or selecting the opt-out checkbox if done electronically), the **Company and I agree to be bound by its terms**." *Id.* (emphasis added).

Finally, after electronically signing the Acknowledgment, Plaintiff was prompted with a section titled "Opt-Out of Dispute Resolution Agreement," which included a drop down menu where she affirmatively chose whether to participate or opt-out of the DRA. Abbinante Decl., ¶ 11; Exhibit B thereto. Plaintiff selected "**I wish to participate**." *Id.* (emphasis added). The section also notified Plaintiff that if she wished to opt-out after closing out of the electronic system, she could have contacted the HR Solutions Group to do so within 30 days. *Id.* There is no record of Plaintiff ever opting-out of the DRA. Abbinante Decl., ¶ 12.

### B. Terms of the Dispute Resolution Agreement

The DRA sets forth two steps to the dispute resolution process: (1) The "Open Door" policy, by which employees are encouraged but not required to bring job-related concerns to

3

management, and (2) arbitration. *Id*. at pp. 41-42. Under the arbitration portion, the DRA identifies what arbitration means in plain English: "Arbitration is a way to get efficient resolution of disputes by submitting them to an arbitrator instead of the ordinary process of filing a lawsuit in a court of law." *Id*. at p. 42. It further explains arbitration is final and binding, and as the exclusive means of resolving disputes, "the parties agree that they are waiving their rights to a trial in court with a judge or jury." *Id*.

The DRA provides the American Arbitration Association ("AAA") rules will govern the arbitration proceedings. *Id*. at p. 42. For instance, there are provisions for the selection of a neutral arbitrator, and the right to conduct adequate discovery, present witnesses and evidence, and bring dispositive motions. *Id*. at pp. 42, 44. Notably, Luxottica agrees to pay all arbitrator fees and associated costs. *Id*. at p. 44.

The DRA, again in plain English, provides the arbitration portion covers "virtually all legal claims arising out of or related to [the employee's] employment." *Id*. at p. 41. Under the heading, "What Is Covered By the Dispute Resolution Agreement," the DRA sets forth a non-exclusive list of the specific types of covered claims, which specifically includes claims related to "termination, discrimination or harassment," and arising under the ADEA, Title VII and analogous state statutes. *Id*. at 42. It explicitly provides the arbitration requirement "also is intended to cover **all legal disputes that the Company could otherwise file in court against you**," and includes a non-exclusive list of the types of claims an employer could have against an employee. *Id*. at p. 43. (emphasis added)

Under the heading, "Your Right To Opt Out," the DRA sets forth in bold print two different ways an employee can easily and conveniently opt out of the DRA within 30 days of receiving the agreement: 1) completing a hard-copy of the Opt-Out of Dispute Resolution

4

Agreement;" or 2) electronically selecting the checkbox screen indicating the employee's desire to opt-out of the DRA. *Id*. at 44.  The DRA clearly explains: "Failure to opt-out within the time provided will demonstrate your intention, and the Company's agreement, to be mutually bound by this Agreement and specifically the arbitration provision contained herein." *Id*. Plaintiff never opted out of the DRA, but affirmatively demonstrated her willingness to participate. Abbinante Decl., ¶ 12.

Finally, neither party can alter the terms of the DRA.  The Associate Guide Acknowledgment and Agreement page specifically provides "[t]he Dispute Resolution Agreement cannot be changed, altered, revised or modified as to me without (i) issuance of a new Dispute Resolution Agreement which makes any such changes or modifications, and (ii) my written agreement to such changes or modifications." Abbinante Decl., ¶ 10; Exhibit B thereto. No changes or modifications were made to the DRA after Plaintiff electronically executed it. Abbinante Decl., ¶ 13.

## III. LEGAL ARGUMENT

The Federal Arbitration Act ("FAA") governs any written arbitration agreement and deems it valid, except where contract principles invalidate the agreement.  Specifically, it provides that any "written provision in . . . a contract evidencing a transaction involving commerce[1] to settle by arbitration a controversy thereafter arising out of such contract or

---

[1] The Supreme Court has held the term "involving commerce" is interpreted broadly, such that it coincides with the reach of the Commerce Clause and thereby governs any arbitration agreement *affecting* commerce.  *See Allied-Bruce Terminix Cos., Inc., v. Dobson*, 513 U.S. 265, 273-77 (1995); *Perry v. Thomas*, 482 U.S. 483, 490 (1987) (stating that the FAA "embodies Congress' intent to provide for the enforcement of arbitration agreements within the full reach of the Commerce Clause").  Here, there is no question that the FAA applies to the arbitration agreement in question.  The DRA explicitly states that it "is governed by the Federal Arbitration Act." Abbinante Decl., ¶ 4; Exhibit A thereto, at p. 41.  Furthermore, it is beyond dispute that Luxottica's business affects and involves interstate commerce pursuant to the FAA, even without the DRA's express incorporation of the federal act. *See Allied-Bruce Terminix Cos*., *Inc*., 513 U.S. at 282 (noting that the contract between homeowner in Alabama and termite control company "involved interstate commerce" under the FAA due to the company's "multistate nature" and the fact it used materials from outside Alabama).

transaction . . . shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2.

The FAA was enacted to overcome courts' reluctance to enforce arbitration agreements. *See AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011); *Allied-Bruce Terminix Cos., Inc., v. Dobson*, 513 U.S. 265, 270 (1995). The FAA not only placed arbitration agreements on equal footing with other contracts, but also established a federal policy *in favor* of arbitration. *Concepcion*, 563 U.S. at 339; *Green Tree Financial Corp.-Alabama v. Randolph*, 531 U.S. 79, 89-90 (2000); *Southland Corp. v. Keating*, 465 U.S. 1, 10 (1984). This policy is so compelling that "even claims arising under a statute designed to further important social policies may be arbitrated." *Green Tree*, 531 U.S. at 90.

A court must interpret arbitration agreements liberally, resolving all doubt in favor of arbitration. *See AT&T Tech. Inc. v. Communications Workers of Am.*, 475 U.S. 643, 650 (1986), quoting *United Steelworkers of Am. v. Warrior & Gulf Navigation Co.*, 363 U.S. 574, 582-83 (1960) ("An order to arbitrate the particular grievance should not be denied unless it may be said with positive assurance that the arbitration clause is not susceptible of an interpretation that covers the asserted dispute. Doubts should be resolved in favor of coverage."). The United States Supreme Court has specifically held the FAA's provisions apply to arbitration agreements covering employment-related claims. *See Circuit City Stores, Inc. v. Adams,* 532 U.S. 105, 119 (2001). Thus, the enforcement of the DRA is controlled by the FAA.

When considering a motion to compel arbitration under the FAA, the court's inquiry is limited to two threshold issues: (1) Whether there is a valid agreement to arbitrate; and (2) whether the agreement covers the dispute. *Faber v. Menard, Inc.*, 367 F.3d 1048, 1052 (8th Cir. 2004). *See also* 9 U.S.C. §§ 2, 3; *Howsam v. Dean Witter Reynolds, Inc.*, 537 U.S. 79, 83-84

6

(2002). A party resisting arbitration bears the burden of establishing that the claims are unsuitable for arbitration. *Green Tree*, 531 U.S. at 91. Because the DRA constitutes a valid agreement to arbitrate, and the claims Plaintiff has asserted are clearly covered by the agreement, Plaintiff should be compelled to resolve this dispute in arbitration.

        A.        **The DRA Constitutes a Valid Agreement to Arbitrate Under Missouri Law**

Under the FAA, state contract law determines whether an arbitration agreement is valid and enforceable. *First Options of Chicago, Inc. v. Kaplan*, 514 U.S. 938, 944 (1995). Under Missouri law, a valid contract requires an offer, acceptance, and consideration. *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014). Here, the parties both consented to submit their employment-related disputes to arbitration, and the DRA is supported by valid consideration.

        1.        *Luxottica Made a Valid Offer to Arbitrate*

Luxottica extended a valid offer to enter into an arbitration agreement with Plaintiff. To be valid, an offer must be sufficiently definite in that "the promises and performances to be rendered by each party are reasonably certain." *Hayes v. Price*, 313 S.W.3d 645, 653 (Mo. 2010). Luxottica presented the DRA to Plaintiff, along with all other employees, when the Associate Guide was revised in 2015. Plaintiff was instructed to review and acknowledge the revised Associate Guide using the company's online personnel platform, Eye Grow. Abbinante Decl., ¶ 4. Luxottica records reflect, on December 4, 2015, Plaintiff logged on to Eye Grow using her confidential sign-on credentials, and reviewed Luxottica's offer to arbitrate, in the form of the DRA. Abbinante Decl., ¶¶ 5-9.

The offer is fully contained in the terms of the DRA itself. The DRA sets forth the key terms of the contract in plain English, and with an appropriate level of detail. Among other things, it explains what arbitration is, what rights are being given up in favor of arbitration by both Parties, what rights are not being given up by the Parties, what costs will be assumed by

7

Luxottica, what procedures will apply, and what types of claims are covered. Abbinante Decl., ¶ 4; Exhibit A thereto, at pp. 41-45. Accordingly, the DRA presented to Plaintiff on December 4, 2015 was sufficiently definite to constitute a valid offer, because "the promises and performances to be rendered by each party [were] reasonably certain." *Hayes*, 313 S.W.3d at 653.

2.  *Plaintiff Accepted Luxottica's Offer to Arbitrate*

Plaintiff unequivocally acknowledged and accepted the agreement to arbitrate in the DRA, and, in fact, did so on three separate occasions. First and foremost, Plaintiff accepted the DRA when she executed, via electronic signature, the Associate Guide Acknowledgment and Agreement form after reviewing the Associate Guide. Plaintiff's electronic signature indicates she "understand[s] and agree[s] to the terms of" the DRA. Abbinante Decl., ¶ 10; Exhibit B thereto. *See Patterson v. Tenet Healthcare, Inc.*, 113 F.3d 832, 834-35 (8th Cir. 1997) (finding arbitration agreement valid where employee signed form with "contractual terms such as 'I understand,' 'I agree,' [and] I 'agree to abide by and accept . . .'") (applying Missouri law); *McIntosh v. Tenet Health Sys. Hosps., Inc./Lutheran Med. Ctr.*, 48 S.W.3d 85, 89 (Mo. Ct. App. 2001) (finding arbitration agreement valid where handbook acknowledgement contained employee's voluntary agreement to submit to binding arbitration in exchange for employer's agreement to submit to binding arbitration). In Missouri, signatures remain a common, "though not exclusive," method of demonstrating acceptance of a contract. *See Morrow v. Hallmark Cards, Inc.*, 273 S.W.3d 15, 22-23 (Mo. App. 2008) (arbitration agreement rejected on other grounds). *See also Gannon v. Circuit City Stores, Inc.,* 262 F.3d 677, 682 (8th Cir. 2001) (finding plaintiff demonstrated her intent to arbitrate employment disputes by signing agreement). Electronic signatures and electronic agreements are enforceable in Missouri. Mo. Rev. Stat. § 432.230(1) ("[a] record or signature shall not be denied legal effect or enforceability

8

solely because it is in electronic form"); *In re H & R Block IRS Form 8863 Litig.*, 2014 WL 3401010, **2-3 (W.D. Mo. July 11, 2014) (recognizing Missouri had adopted the Uniform Electronic Transactions Act and finding plaintiffs assented to arbitration by electronically signing the relevant documents).

Second, Plaintiff acknowledged having been given the opportunity to review the DRA, when "checking the box" within the Eye Grow platform. [citation needed]. Third and finally, Plaintiff had to select whether to participate or opt-out of the DRA from a drop down menu, and she affirmatively chose "I wish to participate." Abbinante Decl., ¶ 11; Exhibit B thereto.

It is noteworthy that arbitration agreements located *within* an employee handbook have been upheld by Missouri courts when specifically acknowledged by the employee, like the one at issue here. *See McIntosh,* 48 S.W.3d at 89 (finding plaintiff's signature on handbook acknowledgement form constituted acceptance of arbitration program outlined elsewhere in employee handbook); *Patterson*, 113 F.3d at 834-35 (holding that employee accepted arbitration when she signed handbook acknowledgement form stating that she agreed to submit any complaints to arbitration pursuant to a separately "published process"). Accordingly, because Plaintiff specifically agreed, via electronic signature on the Associate Guide Acknowledgment and Agreement form, to be bound by the DRA, *and* affirmatively selected "I wish to participate" when she could have selected to "opt-out" on the same acknowledgement page, there is no question that she assented to be bound by the DRA.

Additionally, Plaintiff had 30 days to opt out of the DRA, even after she electronically selected "I wish to participate," and she chose not to do so. Abbinante Decl., ¶¶ 4, 11-12; Exhibits A at pp. 44 & D thereto. The opt-out provision made clear that: "Failure to opt-out within the time provided will demonstrate your intention, and the Company's agreement, to be

mutually bound by this Agreement and specifically the arbitration provision contained herein." By affirmatively choosing not to opt-out within 30 days, Plaintiff *again* demonstrated her intent to be bound by the DRA.

To the extent Plaintiff contends she did not read or understand the DRA or its opt-out provision, she is still bound by its terms. It has been black letter law in Missouri for more than 100 years that a party who signs a written contract is bound by its provisions regardless of his failure to read or understand the terms. *See Donnelly v. Missouri-Lincoln Trust Co.*, 239 Mo. 370 (Mo. 1912) (holding a "written contract is the highest evidence of the terms of an agreement between the parties and one who signs such is bound by its provisions although he failed to read it or inform himself of its provisions"); *Chochorowski v. Home Depot U.S.A.*, 404 S.W.3d 220, 228 (Mo. 2013) (holding "a signer's failure to read or understand a contract is not, without fraud or the signer's lack of capacity to contract, a defense to the contract").

    3.  *The Agreement to Arbitrate is Supported By Consideration*

Finally, the DRA is supported by consideration because both parties *mutually* agreed to arbitrate their employment-related disputes. Consideration "consists either of a promise (to do or refrain from doing something) or the transfer or giving up of something of value to the other party." *Baker v. Bristol Care, Inc.*, 450 S.W.3d 770, 774 (Mo. 2014). Further, "it is not the function of the law to concern itself with the adequacy of consideration." *Doss v. EPIC Healthcare Mgmt. Co.,* 901 S.W.2d 216, 220 (Mo. App. 1995); *Baker*, 450 S.W.3d at 782 (Wilson, J., dissent) (noting Missouri's long recognition of the principle, "any bargained-for exchange will supply the consideration needed to form a contract," regardless of adequacy). Within the context of enforcing arbitration agreements, "bilateral contracts are supported by consideration and enforceable when each party promises to undertake some legal duty or liability." *Baker*, 450 S.W.3d at 776; *McIntosh*, 48 S.W.3d at 89 (holding that arbitration

agreement containing mutual promises to arbitrate disputes was enforceable).

In *Baker*, the Missouri Supreme Court analyzed an employment arbitration agreement, and held that it lacked consideration to support the formation of a valid and enforceable contract. *Baker*, 450 S.W.3d at 777.  The *Baker* Court found the employer's proffered consideration for the arbitration agreement – its own mutual agreement to arbitrate – failed because the employer had the ability to unilaterally amend the agreement with thirty days' notice and avoid its obligations.  *Id*.  The *Baker* Court found the employer's retention of "unilateral authority to amend the agreement retroactively" rendered its promise to arbitrate illusory and was not consideration for a valid contract.  *Id*. at 776-77.

Here, unlike the arbitration agreement in *Baker*, the DRA is clear that both parties are required to arbitrate employment related claims, and Luxottica's obligations are in no way illusory.  Under the heading, "What Is Covered By the Dispute Resolution Agreement," the DRA explicitly provides that the arbitration requirement also covers "**all** legal disputes that the Company could otherwise file in court against you," including, but not limited to, "claims for misappropriation, conversion, fraud, breach of fiduciary duty, breach of the Confidentiality Agreement and breach of any other legal duties that an employee has to his or her employer." Abbinante Decl., ¶ 4; Exhibit A thereto, at p. 43 (emphasis added).

Critically, and unlike the agreement in *Baker*, the DRA here has no provision giving Luxottica the "unilateral authority to amend the agreement retroactively."  *See Baker*, 450 S.W.3d at 776-77.  In fact, the Associate Guide Acknowledgment and Agreement page specifically provides that Luxottica **cannot** unilaterally change the DRA, stating: "The Dispute Resolution Agreement cannot be changed, altered, revised or modified as to me without (i) issuance of a new Dispute Resolution Agreement which makes any such changes or

…

…

modifications, and (ii) my written agreement to such changes or modifications." Abbinante Decl., ¶ 10; Exhibit B thereto.

As separate consideration for DRA, Luxottica agrees to pay "the entire fee of the arbitrator for his or her services and any associated costs incurred by the arbitrator or the AAA." *Id*., at p. 44. Luxottica also agrees to pay the AAA filing fee, in excess of any amount required to file a lawsuit. *Id*. Luxottica's agreement to take on essentially all arbitration fees, which can be substantial, is a significant benefit to Plaintiff and certainly constitutes additional consideration for her agreement to arbitrate. Given that there are at least two independent forms of consideration supporting Plaintiff's agreement to arbitrate, there is no question that the consideration element is satisfied here.

    4.    *Luxottica's DRA Has Been Enforced By Various Other Courts*

Unsurprisingly, multiple courts have upheld the same or similar Luxottica DRA and compelled arbitration of employee claims on that basis. For instance, the U.S. District Court for the Middle District of Florida upheld the same DRA, which the plaintiff had executed using the Eye Grow platform, earlier this year. *See Ferrara v. Luxottica Retail North America Inc.*, 8:17-cv-2914-T-33AEP (M.D. Fla. Jan. 26, 2018), attached hereto as Exhibit 2. The Court in that case rejected plaintiff's argument that she did not see or sign the DRA, reasoning that she accepted the agreement to arbitrate by electronically signing the acknowledgement page and by not electing to opt-out. *Id.; see also Charles v. Luxottica Retail North America Inc.*, 30-2017-00897672 (Cal. Sup. Ct., Orange County, July 26, 2017) (enforcing DRA and finding it sufficiently mutual in obligation and not unconscionable based on opt-out option), attached hereto as Exhibit 3; *Elsadig v. Luxottica Retail North America Inc.*, 3:16-CV-02055-L (N.D. Tex. July 10, 2017) (finding that plaintiff was bound by the terms of the DRA, even where he did not return acknowledgement form, because he did not submit an opt-out form and he continued

to work for Luxottica), attached hereto as Exhibit 4; *Smith v. LensCrafters, Inc.*, EDCV 13-01348-VAP (DTBx) (C.D. Cal. Oct. 16, 2013) (finding that plaintiffs knowingly consented to the DRA and rejecting their argument that the DRA was an unconscionable contract of adhesion, reasoning that the plaintiffs signed electronically and elected not to opt-out), attached hereto as Exhibit 5.

### B.   The DRA Covers Plaintiff's Claims

As to the second threshold issue, whether the DRA covers the dispute in question, the claims asserted by Plaintiff in this litigation unambiguously fall within the scope of the arbitration agreement. The DRA covers "virtually all legal claims arising out of or related to [the employee's] employment." Abbinante Decl., ¶ 4; Exhibit A thereto, at p. 41. Under the heading, "What Is Covered By the Dispute Resolution Agreement," the DRA sets forth a non-exclusive list of the specific types of covered claims, which explicitly includes claims related to "termination, discrimination or harassment," arising under the ADEA, Title VII or analogous state statutes. *Id*. at 42.

In this litigation, Plaintiff alleges Luxottica discriminated against her on the basis of her age and sex when it terminated her employment, in violation of MHRA, the ADEA, and Title VII. No other claims are asserted. The claims in question specifically relate to "termination, discrimination or harassment," *and* arise under statutes that are specifically encompassed within the agreement. Accordingly, there is no question whatsoever that the dispute at issue falls within the scope of the DRA.

### IV.   DISMISSAL

Due to the fact that all of Plaintiff's claims are subject to arbitration, her Petition should be dismissed. *See Randazzo v. Anchen Pharm., Inc.*, No. 4:12-CV-999 CAS, 2012 WL 5051023, at *8 (E.D. Mo. Oct. 18, 2012) (finding dismissal appropriate where all of the plaintiffs' claims

fell within the scope of the parties' arbitration agreement) (*citing Green v. SuperShuttle Int'l, Inc.*, 653 F.3d 766, 769-70 (8th Cir. 2011) (recognizing "district courts may, in their discretion, dismiss an action rather than stay it where it is clear the entire controversy between the parties will be resolved by arbitration")); *Bray v. United Ins. Co. of Am.*, No. 4:14-CV-01390-CEJ, 2014 WL 6389569, at *3 (E.D. Mo. Nov. 14, 2014) (dismissing case because the plaintiff's claims were subject to binding arbitration); *Rothman Furniture Stores, Inc. v. Everest Software, Inc.*, No. 4:10-CV-848 CDP, 2010 WL 4319707, at *2 (E.D. Mo. Oct. 22, 2010) (finding dismissal of arbitrable case appropriate, because "no purpose would be served by staying the case instead"). Thus, Luxottica requests this Court dismiss this case and compel arbitration. Alternatively, Luxottica requests this action be stayed pending completion of binding arbitration. *See* 9 U.S.C. § 3. Finally, Luxottica requests this Court stay all proceedings in this matter, pursuant to Mo. Rev. Stat. § 435.355(4), pending resolution of this Motion.

## V.     CONCLUSION

For the reasons set forth below, Defendant Luxottica Retail North America Inc. respectfully requests this Court grant its Motion to Dismiss or, in the Alternative, to Stay Action and Compel Arbitration, stay all proceedings in this matter, pending the resolution of this Motion, and for such other and further relief as the Court deems just and proper.

Respectfully submitted,


*/s/ Joseph M. Wientge, Jr.*
Joseph M. Wientge, Jr., #57494 MO
jwientge@littler.com
Ashley A. Diaz, #67335 MO
aadiaz@littler.com
LITTLER MENDELSON, P.C.
600 Washington Avenue
Suite 900
St. Louis, MO  63101
Telephone: 314.659.2000
Facsimile: 314.659.2099

*Attorneys for Defendant*


## CERTIFICATE OF SERVICE

I hereby certify that on the 4th day of October, 2018, I electronically filed the foregoing with the Clerk of Court using the CM/ECF system to be served by operation of the Court's electronic filing system upon the following:

Mary Anne Sedey
Jessica M. Scales
SEDEY HARPER WESTHOFF, P.C.
2711 Clifton Avenue
St. Louis, MO 63139
Phone: 314.773.3566
Fax: 314.773.3615
msedey@sedeyharper.com
jscales@sedeyharper.com

*Attorneys for Plaintiff*

*/s/ Joseph M. Weintge, Jr.*


FIRMWIDE:157128114.3 079347.1031