UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | | |
|---|---|---|
| KATHLEEN OLIVASTRO, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | Case No. 4:18 CV 1646 CDP |
| | ) | |
| LUXOTTICA RETAIL NORTH AMERICA INC., | ) ) | |
| | ) | |
| Defendant. | ) | |

## **MEMORANDUM AND ORDER**

Pending before me is defendant Luxottica Retail North America's motion to dismiss this case or in the alternative to stay proceedings and compel arbitration. Plaintiff Kathleen Olivastro brings this suit alleging age and sex discrimination against Luxottica, her former employer. Luxottica seeks to enforce the Dispute Resolution Agreement that Olivastro and Luxottica entered into when she was their employee. Olivastro initially opposed the motion based on the argument that the agreement was not a valid contract under Missouri law because it lacked consideration. Both sides filed several supplemental briefs in light of recently-decided Missouri cases, and the most recent briefs focused on whether this issue had been delegated to the arbitrator. I conclude that the dispute is covered by the arbitration agreement and that the issue of consideration was delegated to the arbitrator. I will therefore grant the motion to compel arbitration.

**Background**

In 2012, Luxottica hired Olivastro as regional manager; she was employed in this role until her termination in June 2017. In 2015, Luxottica issued a revised Associate Guide, which included the Dispute Resolution Agreement (DRA). ECF 10-1 at pg. 2. On December 4, 2015, Olivastro agreed to the DRA via the company's online web portal. *Id.* at 3. In order to agree, she had to access the portal using her unique login and password. Olivastro signed, via electronic signature, the Luxottica Associate Guide Acknowledgement, which stated:

> Absent the exercising of my right to opt-out of that Dispute Resolution Agreement (by signing and returning the Opt-Out of Dispute Resolution Agreement form within 30 days of receipt, or selecting the opt-out checkbox if done electronically), the Company and I agree to be bound by its terms.

*Id.* Further, after electronically signing the Acknowledgment, Olivastro affirmatively chose to participate in the DRA when she selected the "I wish to participate" prompt. *Id.* at 4. She was also notified that she could opt out by notifying the HR Solutions Group within thirty days. There is no record of Olivastro opting out of the DRA. *Id.*

The DRA states that the American Arbitration Association (AAA) rules will govern arbitration proceedings. ECF 10-1 at 42. The DRA sets forth the types of claims that the DRA covers, which include claims related to termination,

discrimination, or harassment.  *Id*.  The DRA expressly states "the Arbitration portion of the Dispute Resolution Agreement also is intended to cover all legal disputes that the Company could otherwise file in court against you." *Id*. Furthermore, the DRA states: "Any dispute about the enforceability of the Dispute Resolution Agreement shall be decided by a court." *Id.* at 43.  The DRA also provides: "Failure to opt-out within the time provided will demonstrate your intention, and the Company's agreement, to be mutually bound by this Agreement and specifically the arbitration provision contained herein." *Id*. at 44.

## Discussion

The Federal Arbitration Act (FAA) established a strong policy favoring arbitration and "any doubts concerning the scope of arbitral issues should be resolved in favor of arbitration." *Moses H. Cone Memorial Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24–25 (1983).  The FAA limits a district court's initial role in a challenge to an arbitration agreement to deciding whether the "making of the agreement for arbitration or the failure to comply therewith is at issue." *Medcam, Inc. v. MCMC*, 414 F.3d 972, 974 (8th Cir. 2005) (quoting 9 U.S.C. § 4). Since "arbitration is a matter of contract," state-law contract principles govern the validity of an arbitration agreement; an arbitration agreement maybe "invalidated by generally applicable contract defenses." *Torres v. Simpatico, Inc.*, 781 F.3d 963, 968 (8th Cir. 2015).  "If a valid and enforceable arbitration agreement exists

under state-law contract principles, any dispute that falls within the scope of that agreement must be submitted to arbitration." *Id.* "Missouri law requires 1) an offer, 2) acceptance, and 3) consideration to form a valid and enforceable contract." *Shockley v. PrimeLending*, 929 F.3d 1012, 1017 (8th Cir. 2019).

The DRA expressly incorporates the AAA Employment Arbitration Rules. ECF 10-1 at 42. The DRA states: "The American Arbitration Association Employment Arbitration Rules ("AAA Rules") and this Dispute Resolution Agreement will govern the proceedings." *Id*. The AAA Rules contain a delegation provision: "The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to the existence, scope, or validity of the arbitration agreement." EMPLOYMENT ARBITRATION RULES AND MEDIATION PROCEDURES 6(a) (Am. Arb. Ass'n. 2009).

Under the FAA, parties can agree to arbitrate 'gateway' questions of arbitrability. *Rent-A-Center West, Inc. v. Jackson*, 561 U.S. 63, 68 (2010). When the AAA Rules are incorporated into the Agreement, "the parties agreed to allow the arbitrator to determine threshold questions of arbitrability." *Green v. SuperShuttle International, Inc.*, 653 F.3d 766, 769 (8th Cir. 2011); *see also State ex rel. Pinkerton v. Fahnestock*, 531 S.W.3d 36, 45 (Mo. banc 2017).

The Missouri Supreme Court recently held that when plaintiffs "contest the presence of consideration" they raise issues of contract formation rather than

enforceability. *State ex rel. Newberry v. Jackson*, 575 S.W.3d 471, 475 (Mo. banc 2019). This case is directly applicable because the plaintiffs in *Newberry* made the same argument as Olivastro does here: that the agreements lacked consideration. *Id.* at 472. Moreover, the agreements in *Newberry* contained a similar non-delegation clause exempting claims regarding the enforceability of the agreement. *Id.* at 473. *Newberry* held that an argument that a contract lacks consideration is a challenge to the validity of an arbitration agreement and was delegated to the arbitrator. *Id; see also Soars v. Easter Seals Midwest*, 563 S.W.3d 111, 114-116 (Mo. banc 2018).[1]

Here, the DRA expressly incorporates the AAA Rules, thereby allowing questions of validity to be decided by the arbitrator. The "non-delegation" clause in the DRA applies to issues of enforceability, not to issues of validity. As consideration is a threshold issue going to validity, it has been delegated to the arbitrator in this case.

I will therefore grant the defendant's motion to compel arbitration. I will stay the case pending conclusion of the arbitration, rather than dismiss it. *See Green v. SuperShuttle,* 653 F.3d at 769-70.

Accordingly,

---

[1] *Soars* also noted that when determining the existence of consideration, Missouri courts do not evaluate the adequacy of the consideration, 563 S.W.3d at 116. This rule is contrary to the consideration arguments Olivastro initially raised in this case.

5

**IT IS HEREBY ORDERED** that Defendant Luxottica's Alternative Motion to Stay Action and Compel Arbitration [9] is GRANTED and the motion to dismiss is denied.

**IT IS FURTHER ORDERED** that this case is STAYED pending completion of the arbitration.

**IT IS FURTHER ORDERED** that the Clerk of Court shall administratively close this case, subject to the right of either party to move to reopen it, if appropriate, upon completion of the arbitration.

_____
CATHERINE D. PERRY
UNITED STATES DISTRICT JUDGE

Dated this 10th day of September, 2019.